All right, I'll now call the case of Viola Bryant v. Sheriff Ken Mascara. All right, I'll now call the case of Viola Bryant v. Sheriff Ken Mascara. Good morning. Good morning. May it please this honorable court. My name is John Phillips. Obviously today I'm here as appellate counsel. I was also lead trial counsel at a six day, 31 live witness trial. With me today is Kirby Johnson. He was an attorney with me at trial. We also have some of Greg Hill's family, his fiance, his mother, and two of his children. Good morning. We're sorry for your loss. Thank you, Your Honor. If you have questions, I mean I can go into my presentation, but if you have questions, I'm happy to answer them, otherwise I can start my presentation. Okay, so as I said, this was a six day trial with 31 live witnesses. The issues were actually fairly simple. Was there a gun in Mr. Hill's hand? There were witnesses on both sides. Was what Officer Newman did objectively reasonable under the case law that we'll get into? How did the subject gun found in Mr. Hill's pants get there given the biomechanical testimony? How did the gun avoid all blood splatter, DNA, and fingerprints? And how high did the door go up? Those were the key facts, the key issues in dispute. It did not involve Mr. Hill putting his credibility at issue or anybody else putting his credibility at issue, which we see in the other cases on this point. It did not involve suicide by cop, absolutely not. And it did not involve any dispute about what happened after the garage door closed. By then, the use of force had already been administered. And so with that, I go into the defining case law. This is a U.S. constitutional case. It's interesting. On my way over, I told my fellow attorneys that, and I say this because we have law students here. When I sat in law school at the University of Alabama 20 years ago, we didn't have trial appellate argument. We didn't have trial argument, we had appellate argument. And it was a constitutional case. And I said, I'd never be here, I'd never do this, why am I doing it? So to them, I say, don't limit yourself, just like your honors did. But it's a Fourth Amendment case. Mr. Hill was supposed to be free from unreasonable seizures. Shooting someone is the ultimate seizure, according to the case law. So here, you've listed a lot of issues. It seems to me that the real issue in the case is whether Mr. Hill had or didn't have a gun in his hand. Because if he did, then, you know, if you're in that situation, I don't see how it necessarily matters which direction it's pointing. If you're in close proximity, I think most police officers would feel under threat. And I think our case law would suggest that if you're presented with a person with a gun, officers, it's not excessive force to shoot. On the other hand, I think there are some real questions about whether the evidence shows that he did have a gun in his hand or whether it was in his pocket. Now, of course, the problem is that we're looking after a jury verdict. The jurors heard all this evidence in what is obviously a tragic case and made the conclusion based on all that evidence that he did, it appears, have that gun in his hand. You know, whether that's what I think I would have said if I were on the jury is not the issue. The objection I think that you have that comes the closest is the potential prejudicial impact of his probationary status. Can you make that argument a little bit to us and tell us especially why, assume that that was an improper admission, why is that not harmless error rather than error that would be reversible? That is the most important, Judge Grant. We have to look at Graham, Sherrod, and Escobedo to understand that. In real simple terms, Graham says we look at it from a reasonable officer standard without use of 20-20 hindsight. Throughout the testimony, Newman says the gun was anywhere from here to here raising up. We feel that there was a paradox with what they argued to get probation in because they were saying that it was, sorry, microphone, that it was a paradox that it was then being put in his pocket. Sherrod clearly says when a jury measures the objectable reasonableness of an officer's testimony, then his shoes judge the reasonableness based upon the information he possessed. Jury should not possess more information than the officer. Escobedo comes back and says, hold on, not so fast. There are cases that limit the evidence when it's unknown to the officers at the time when it's admission to attack credibility and to impeach witnesses. Here probation did neither. You've got to look at the nature of probation here too, even according to the probation officer who they brought in. He testified that the probation was set to terminate automatically before this ever happened. It was a probation that he pled no contest, adjudication was withheld. What it wound up being is a trial of not just one, but two violations of probation and led to a dollar jury verdict. We think it was very harmful, significant impact. What the court said, and you can go into Escobedo at night, but the court, there's only one 11th Circuit case on point and it's Knight through Kerr, and that case is so significantly different, even though the court put all the reliance on it, because in that, probation was brought in and criminal history was brought in for two reasons. One, because they were in the act of fleeing before the shooting, and in fact, the car was headed towards the officer and one of the decedents had court the next day and wanted to get out of there, and so of course that was important. The other way it came in is the survivor told two stories. She told one story on the night of the incident or the early morning right after, and the second in her deposition, and so certainly she brought her credibility at issue that probation matters, particularly when it was for grand theft. Here it was a drug crime. It was set to term. He wasn't going to jail. It was a loud music case. There was no underlying crime. The officers didn't even know what the underlying crime was. He was listening to loud music, opened his garage door, closed his garage door. From the standpoint of Officer Newman, Deputy Newman, he had to take his victim as he came, Castle Doctrine and Second Amendment, fully respected. He was in his own home. He finds out, you know, days later that he was on probation. So how ... Assume for purposes of argument that we thought that that evidence shouldn't have come in. How is that evidence enough to be harmful error rather than harmless error, given that from reading the transcript, the counsel on the other side didn't, in my mind, especially lean in on probation or especially suggest that he was a bad guy because he was on probation or the kind of guy who was always doing crimes because he was on probation. So, I mean, sometimes you see counsel just really leaning in and making a big deal of past convictions. I don't really see that here. We'd argue that it was never relevant in the first place. And even though they didn't lean in, we do have some insight into ultimately what the jury did. And a dollar verdict for his children showed that they were, that they were, they did that for a reason. And we'll never know. And, you know, but that on top of the other issues, and I fully agree, some of them go into cumulative. The issue with the gun not being disclosed and the issue with the probation are the two most significant. Can I ask you a question about the gun and the shorts being used as demonstrative evidence? My understanding is that I think they concede that the gun was not disclosed as an exhibit. And under Rule 26 and Rule 37, there is a continuing obligation to disclose and provide evidence. And Rule 37 allows for evidence to be stricken or additional sanctions to be imposed on the parties in a civil case. So the question I have is, was it prejudicial to allow the gun to be used as a demonstrative aid when it wasn't given to your, to your side as, as potential evidence? Yes, Your Honor. Our expert never got to test it. We never got to do a demonstration. The first time we found out about it was when they moved to bring it into the courthouse. Obviously it's a firearm. And so they got to make the election on the eve of trial, whether or not to use it as a demonstrative aid. And the court hung onto that, that it was demonstrative. It wasn't, it wasn't evidence per se. And the point is through 26, they didn't disclose the custodian of the gun. You know, all that we had initially was a 300 page book that had the list in it. And then they disclosed the list itself. Well, if I give, you know, if my wife goes and, and comes back to the grocery store with a, with a, with their grocery list, she didn't get the groceries. And so, uh, so it's different. We needed disclosure. Our experts are prepared. You know, you've all litigated in federal court. Uh, it, it's really important for us to know months in advance, uh, what we had because that was a key issue in the case about how he got the gun from, from here or here into his back pocket in what was less than a second. And my understanding is, and correct me if I'm wrong, because, um, uh, but the, the officer who was a lay witness, but testified with regards to the gun and the shorts, did he just, um, cause I don't think there was an anatomically, uh, correct model wearing the shorts. I mean, he, what did he just stand up, do this, this is how the gun went in. He did. And that also didn't really assist the trier of fact, cause there were photos of the gun in the shorts. But it was somebody that, that, like you said, was a lay witness, hadn't been there. Um, who, who just, you know, kind of dropped it into the, and they weren't, they were not present. My understanding again at the scene, uh, when the incident occurred, they were not. So remind me what the, did you did raise an objection at the time? We did. We, we strenuously objected related to the gun, uh, from the point that we knew that they were going to bring it in with the motion, uh, to, to actually bring a firearm into a courthouse. We immediately objected. Uh, actually I preserved it before it was brought out on, on docket entry two 40 page one 84. So I, I tried the whole way to prevent this gun because that was a significant issue for our case and for our defense about how it got from here to here. Even the measurements, because the gun, as we said, had no blood splatter on it, but the shots were here and here, how it all went down, uh, it was of significant importance. The size of the gun, the color of, you know, the hand and the contrast of the gun, it was all important. And, and just to be clear, so you, you never learned of the gun through the discovery process. You only learned of it when, uh, and the weekend before the trial on Monday is before they moved to, to get, where they have to, you have to get a court order to bring a gun into a courthouse. Yes, Your Honor. And the judge, and I'm out of time. May I finish? Yes. The judge, the judge said, well, it was just demonstrative value and you should have known, you should have guessed that the gun was there, but that was a part of the criminal case. There was a grand jury that looked at this. And so federal court is the, is the place of fair play. It's not state court where, where lawyers kind of gotcha. There should be rule 26 and rule 37 exist. There must. Rule 26, you have an, it's an initial disclosure. I mean, you don't even have to send a request for production. I mean, it's an automatic and if you don't do it, you're going to be in trouble. Yes, Your Honor. State courts are not so bad though. No, they're not. He likes state courts. Thank you. Particularly former state court justices. May it please the court. Good morning, Your Honors. My name is Greg Jolly here. Thank you. Thank you, Your Honor. My name is Gregory Jolly along with Summer Barranco. We represent the Appalese Sheriff Mascara and Deputy Newman in his individual capacity. As you heard, this case was tried before a jury. The jury ultimately decided that the use of force was reasonable and on the state law claim held that the decedent was intoxicated and that as a result of his intoxication was more than 50% at fault for his injuries, thus entitling the sheriff to judgment as a matter of law on the state law claim. Post-trial motions were filed and ruled upon and final judgment was entered. The Appalese are asking that final judgment be affirmed in this case. I've got a question on the probation evidence. You've asserted in your briefs and before the district court that it was important to have this evidence that the decedent was on probation to tell part of the story about why he would have wanted to quickly put the gun away when he saw the police. I have to tell you, I am not on probation and I have every right to have a gun, but if I were holding one and saw the police, I would sure put it away too because I think that they could shoot me if they saw it. Why do you think that someone on probation would have any different reaction than an ordinary person who just didn't want police to see them brandishing a gun in their direction? Your Honor, I would suggest that you can't take that fact in a vacuum. It's not just that he was on probation. It's also that he was heavily intoxicated, which was also prohibited by the terms of his probation. So those two facts in conjunction, from our perspective. What does that matter that he was violating his probation? That it gave him motivation to number one, close the garage door quickly, which it's the defendant's position that in the process of manually closing that garage door quickly, that caused him to raise the gun up in such a way that defendant Newman perceived as a threat. I thought that they didn't, I thought that the, whose position are you saying that is? That's the defendant's position, Your Honor. The officers. The officers. But Mr. Bryant's estate says that he never had the gun in the first place rather than, I don't think the argument is that he pointed it or didn't point it in a particular direction, right? No, there were arguments. Or maybe he had it in his pocket the whole time. That was certainly part of the trial. They also made arguments that the gun never raised and when the garage door closed, even if he was holding the gun, the gun was never a threat because the garage door was a barrier between the officers and the defendant. But again, I'm having trouble understanding why either the probationary status or the fact that he was, and again, the intoxication, maybe that would be relevant to comparative negligence, but the purpose of the probation, what is the relevance of that for purposes of whether he's going to close the door or not close the door? I mean, the officer has no knowledge that he's on probation, correct? That is correct, Your Honor. So why would the jury have to know that? Because when the officer's walking up, he doesn't know that. Well, because I would suggest, Your Honor, it's atypical for a person who sees a law enforcement officer to slam the garage door like that. Why? I don't even have to open the door to the police officer. No, you don't. But it explains his actions, Your Honor. And that was our theory of the case, that when he opens the garage door and sees a law enforcement officer, he recognizes that he is potentially facing serious consequences for violating two terms of his probation. Has he said that he didn't, has the estate said that he didn't close the garage door? I don't understand that to be in dispute. That is not in dispute, Your Honor, but it also goes to- How can you explain something, explain a reason for something that no one's really questioning? Well, it's not just that he closed the garage door quickly, it's also that he concealed the gun because that was another feature of the trial that he would not have been able to, he did not have the opportunity- How can you conceal the gun if your position is that he had it this way? So that's kind of hard to conceal a gun that you're supposedly holding up. I wasn't there, Your Honor, but it's the defendant Newman's position, he testified that when the garage door comes down, the gun starts to come up. And then we know the gun ended up in his back pocket. And the plaintiff argued at trial, he would not have had that opportunity to put the gun in his back pocket. This also goes to the firearm demonstration. I think it was suggested that the witness testified that this is how the gun dropped in the pocket. That's not what happened. All that happened during trial was we had the detective at the sheriff's office who was the custodian of the evidence at trial. Okay, first of all, how can you even have a demonstrative evidence that's really literally physical and real evidence? Because the problem was we could not send that evidence back to the jury. It was contaminated with some biological material along with the shorts. I mean, I was a district judge for 10 years. I mean, you don't send guns back with the jury in any event, but you still admit them into evidence. I mean, I assume you had the plastic through the works of the gun. I mean, it wasn't functioning, but you still don't send it back with the jury, but that shouldn't be admitted into evidence. It routinely is, in my experience. Well, there were certainly pictures of the gun that were admitted into evidence, but the actual gun was not admitted into evidence. You didn't admit it because you didn't disclose it, so it's hard to admit evidence when you didn't disclose it because even this trial court judge, I assume, would have excluded it as evidence. No, Your Honor. Actually, the trial court judge held that, in effect, we had disclosed it and that they were on notice of that we were in possession of the gun. How can you be on notice? You know you're in federal court, not state court, and in federal court, you have a continuing obligation to disclose names, witnesses, and production of evidence. It's not a free-for-all in federal court, so you need to disclose everything that you're going to rely on and that you have in your possession. Did you disclose listed possession gun, whatever it is, a Glock or whatever it was? Not that explicitly, Your Honor. No. And do you believe that that is an obligation that you have under Rule 26? I believe we have an obligation to disclose the evidence. We did list all physical evidence, Your Honor. All physical evidence. Any items of physical evidence concerning the subject incident, you know, it's pretty vague.  It is, Your Honor. I would also say the judge's decision in that regard arrives at a high level of deference and Judge Rosenberg determined that our failure to explicitly disclose the gun was harmless error at worst. It was also in our brief that during one of the depositions . . . How is it harmless error? This was actually sort of the linchpin of the whole case, which is either he was holding the gun or he had it in his back pocket. If he has an expert and his expert is unable to be able to test the weapon to determine whether or not there's blood splatter or anything like that, whether or not there was any evidence that he had his fingerprints on it, whatever it is, he had no ability to do that because you didn't disclose it as something you were going to use in this criminal case, in this civil case. Your Honor, part of the reason I believe the court found it was harmless error is because plaintiff's counsel inquired with some of the witnesses during pretrial discovery about the evidence that was in the possession of the sheriff. The witness told plaintiff's counsel, you need to reach out to Don Radke, the evidence custodian and that was never followed up with. I think that was part of the calculus of Judge Rosenberg's decision. This is not a criminal case. This is a civil case. In a criminal case, I understand that because the evidence is being held because there's a custody, a chain of custody and you have to be able to show at trial that this evidence has been maintained properly in order to be authenticated and introduced as evidence. This is a civil case and in a civil case, you, counsel, are responsible for the evidence. You have control of the evidence and it's your responsibility to disclose it and turn it over to the other side so that they can at least inspect it and have their experts look at it. Correct? Yes or no? Yes, Your Honor. Moving on to, unless there are any more questions about that issue, Your Honor, if I could go back to the probation issue. Plaintiff's counsel relies on the Sherrod case out of the Seventh Circuit. Obviously, the Seventh Circuit decisions are not precedent in this circuit. I don't believe the Sherrod case has ever been cited in this court. The Sherrod case involved an excessive force case where the defendant officer testified that he used deadly force when he witnessed the plaintiff, I believe, reach into his pocket. There was no testimony whether or not a gun was ever seen by the defendant officer. I believe that's why the Seventh Circuit held, it didn't matter whether or not, after the fact, it was determined that he was not holding a gun because whether or not the officer saw the gun was not the justification for used deadly force in the first place. The Seventh Circuit later clarified its holding in the Escobedo case and held that information outside of an officer's knowledge is admissible when it tends to add credibility to an officer's version of how a person acted. Isn't this case just as different from the Kerr case as you suggested that it is from the Sherrod case? In Kerr, there were two pretty dramatically different descriptions from the witness about what happened, whether the car fled police before the shooting or afterwards. The evidence of various convictions and probationary statuses really did lend credence to the fact that the car may have fled police on an intentional basis rather than after the shooting. Here, no one's arguing about whether or not the garage door was closed. This goes back to what we were saying before, I think, that it doesn't seem to shed light on anything that's really in question. Well, it did at trial, Your Honor, because it was suggested on Mr. Phillips' argument that the evidence was uncontested after the door was closed, and I don't believe it was. There was a lot of testimony or a lot of argument at trial that he never would have had the opportunity to place the gun in his pocket, and I think the probation status issue also goes to his justification to quickly conceal the gun, and then obviously we needed the shorts to demonstrate how quickly that could happen. Does his probationary status add knowledge about the ability of time and space to provide a particular result, right? I mean, whether or not he's on probation doesn't really speak to whether it's physically possible for him to put the gun in his pocket in a particular amount of time. I also want to point out, Your Honor, that Judge Rosenberg gave a limiting instruction. The limiting instruction was, ladies and gentlemen, as you have heard, Mr. Hill was on probation. This evidence is only admissible to the extent you think it is relevant to Mr. Hill's actions on the date of the subject incident. It is not to be considered for any other purpose. I think it's important to note also that Rule 404 is a rule of inclusion rather than exclusion. Rule 404's provisions exclude evidence only when it tends to show criminal propensity. That is not why the evidence was offered at trial. It was offered for a specific purpose, to demonstrate why he acted the way he acted, as described by the officers. I know, as I was questioning your friend at the other table about, in a case, let's assume, for the purposes of this question, that we did find that that evidence shouldn't have come in. I will say, as I said to him, it doesn't appear that your counsel on your side leaned into this evidence or made a big deal about what it showed about his character or anything like that. On the other hand, ordinarily in cases where, many times in cases where we find harmless error, we'll say, well, there was simply so much evidence on the other side, there's no way that a jury would have come to a different conclusion in the absence of this evidence. Where do you think that this evidence falls in the scale of what's, I think, a closer case than you might often find? Even if the jury's decision was reasonable, I think the evidence is a little closer here than it is in a lot of cases. If I understood your Honor's question, are you asking how important that evidence was? Right. Or how, you know, what's your argument for why this evidence was harmless in the overall scheme of the case, even if it was improperly admitted? Because you had two deputy witnesses who testified that they observed Mr. Hill holding a gun and both witnesses testified that they were in fear for their lives. Those were the two witnesses who said they saw a gun. On the other side, there was only one witness, the decedent's daughter, who was across the street at school waiting to be picked up in the middle of child pickup, so it was crowded. That was the one witness who testified contrary to what the deputy said. So I believe that was the focus of the evidence that the jury ultimately relied on when they determined that the use of force was reasonable. You know, the other thing, I think, that goes into the mix for me, and I hope I'm remembering this correctly, and we read a lot of briefs before a week of oral arguments, but he actually was under probation because the conviction had not been entered, I mean, it was a deferral of conviction or the conviction was going to go away if he served out this probationary sentence. Have I got that right? I believe so, Your Honor. It seems to me that matters as well. His status as a probationer could conjure up all sorts of questions for the jury about what bad thing he had done when, in fact, he was not even going to bear a conviction if he had been able to serve out his probationary sentence without event. My time is over, Your Honor. May I answer your question? I would love for you to answer. Okay. And now I'm having trouble remembering it. Do you mind repeating it, Your Honor? I'm sorry. Well, my point is that, you know, you say, yeah, they needed to know about his probationary status because he was, they were going to defer his conviction, I mean, he was going to come through this process without a conviction, and so in the mind of some jurors, if they had known the full story, you know, it may not have been as, raised a series of questions about Mr. Hill's history if they had known, in fact, you know, that he was, the authorities were going to defer his conviction under this. It's an interesting question, and I think it is a conundrum. Because of the limiting instruction where the jury was instructed, only consider this evidence to the extent it affected his actions on the day of the incident. The point is, he was on probation, arguably he was violating his probation, and that would have, I think, retroacted. That was the testimony at trial, the probation officer, who did say he was on probation. This did not automatically terminate. It might have automatically terminated if he completed certain conditions, which were not completed, but at the time of the incident, he was dead. But the point is, he did not before he was shot. He was on probation at the time of the incident. And so, that testimony, Have you ever seen that New Yorker cartoon where the jury's all sitting there with their hair out like this and the judge is saying, please disregard that evidence. I mean, once they hear it. Well, it wasn't disregard, it was only consider this evidence to the extent that is allowed under Rule 404, Your Honor. Right, but again, I mean, he could have just been closing the garage door because the dog was going to get out. The point is, is that it's irrelevant. There was no dispute that he was closing the garage door. Why he was closing the garage door is irrelevant. At the end of the day, what is it relevant to? It's relevant because in the process of closing the garage door, this is a heavy garage door and that was testified to at trial. In the process of closing this garage door quickly, his arm came off. They can testify to that, but what is the relevance of the fact that he's on probation to the fact that as he's closing the garage door, a gun goes up? Well, because, Your Honor, there was a lot of argument at trial about how this is. The only reason it is relevant, I guess, I understand that you're saying it's not for you, possibly relevant is because under probationary status, he was not supposed to have a gun. And it was suggested all through trial that he's in his own house. He's allowed to do this. And frankly, he wasn't allowed to do that, Your Honor. And I think that also goes to the relevance. They kind of opened the door to that evidence in that respect, Your Honor. But my time, I'm over my time. Well, thank you for the argument. Why shouldn't we credit the limiting instruction from the court? I know, as Judge Martin suggests, it sometimes defies reality to think that these limiting instructions actually have their effect. On the other hand, only in a very limited number of situations, like a brutal violation or something like that, do we really assume that the jury can't or won't follow that instruction? Why isn't that an effective argument here? The limiting instruction was vague and overbroad. But again, I can't stress enough, in these cases, these are tough cases. Law enforcement have a very tough job. They put their lives at risk. But as I'd say, as my mama says, but as everybody's mama says, credibility takes a lifetime to build but an instant to destroy. And when you say somebody is an active criminal and essentially adjudicate them of double violation of probation that had no relevance to the ultimate shooting, you can't unring that bell. It is that cartoon. I was having a hard time coming up with the right language about the nature of his probationary. I mean, he had a conviction deferred, right? He did. It was a drug matter and they actually put in number 20 and it's in the record. I don't have the site, but I can provide it. We know we can find it. But it literally, on the probation, there's a bold paragraph 20 that says, this probation, it's a special condition, ends at the year anniversary date. And there was a question of whether he paid fees. You get into the academics of whether he was still on probation, which just goes to the, again, we don't go into that. We're not going to ring the bell for that. This was the worst of all possible worlds because the jury didn't know the nature of the probation. I mean, maybe he had done something horrible. Correct. And in the world where bad guys versus good guys, cops versus people that potentially point guns at cops, credibility is that much more important. And when you're sliding it and you all three get the paradox here and the irrelevance that they can't have it both ways and they didn't have it, they didn't even make the argument at trial. You know, from the from the get go, the gun was pointed at him at deposition. It was the gun was at Mr. Hill's hip raising up and by trial it was it was in the it was in the vicinity, headed headed up as the garage door went down and four shots rang out instantaneously within a second. And now they want to say, OK, but we're getting in probation because he's putting it in his pocket when they never made that argument. As I as I said, I think actually the natural reaction of anyone who realizes that they're holding a gun when they come face to face with the police is to get that gun out of the way. Was any argument ever made that maybe his high level of intoxication led him to to make a different decision about whether it was appropriate to have a whether that would be a great hiding place for a gun since he was on probation or anything like anything about his his intoxication affecting his judgment? It really did. It was it was a contrast. I'm out of time. Please answer. It really was a contrast of two theories. Our theory was that because of the lack of evidence on the gun, DNA, blood splatter, particularly when the shots were where the gun would have been, that that that gun was never out. There were more than one witnesses that alluded to that. And so we didn't we didn't try to justify why the gun would ever be put back. Was there really more than one witness that said that the gun was never out or were there just other witnesses that said that they didn't see him or his arms at all? Some saw his some saw his hand. There were some school was getting out. Teachers were circulating the even though even the woman who who made the loud music call was parked towards Mr. Hill's house. It's a real small area and and people saw different things. Nobody else testified. I saw an empty hand, but they saw hand. They saw no gun. There were three or four or five witnesses that that if you if you piece together the circumstances testified in contrast to the officers. Thank you so much. Thank you. We appreciate the argument. Court is in recess until nine o'clock tomorrow morning.